OPINION
Appellant Earl R. Romig appeals the March 2, 2000 Judgment Entry of the Tuscarawas County Court of Common Pleas which overruled appellant's objections to three different magistrate's decisions. Appellee is the Tuscarawas County Department of Human Services (hereinafter "DHS").
 STATEMENT OF THE CASE AND FACTS
On June 14, 1999, DHS filed a complaint with the Tuscarawas County Court of Common Pleas, Juvenile Division, alleging Erich Johnson Romig to be an abused, neglected, and dependent child. The complaint was served on Richard Romig, the putative father, and Sheila Johnson, the child's natural mother. The complaint alleged Mr. Romig had subjected Erich to inappropriate physical discipline and verbal and emotional abuse. Ms. Johnson abandoned Erich to Mr. Romig shortly after Erich's birth. Mr. Romig raised Erich since that time. After a June 11, 1999 ex parte hearing, the trial court ordered DHS to take Erich into protective custody. In a June 11, 1999 entry, the trial court advised all parties of their right to counsel and appointed a guardian ad litem for Erich. The trial court conducted a shelter care hearing and ordered Erich be place in substitute care for the pendency of the case. On June 30, 1999, a magistrate conducted an initial hearing. Mr. Romig was present, but was not permitted to participate because he had never established paternity. Notwithstanding this prohibition, the trial court noted Mr. Romig's "plea of denial" to the complaint in its July 1, 1999 Judgment Entry. On July 8, 1999, Mr. Romig filed a "Notice to Court" stating the following: Now comes Attorney Steven A. Anderson by and on behalf of his client, Earl Richard Romig, and notifies this court that as a non-party to this proceeding, we will no longer be participating in this action and therefore will no longer be present in court. Please disregard our previous request for a home study at Mr. Romig's residence.
DHS filed its first case plan on July 14, 1999. Mr. Romig was not part of the case plan. On July 14, 1999, DHS filed a Motion to make the unknown father of the minor child a necessary party to the action. On August 12, 1999, the magistrate conducted the adjudicatory hearing. Ms Johnson, her attorney, the guardian ad litem, and DHS representatives were present. Ms. Johnson changed her plea from a denial to an admission and on motion of DHS, the magistrate dismissed the abuse and neglect counts. In an August 13, 1999 Judgment Entry, the trial court found Erich to be a dependent child. On September 7, 1999, Mr. Romig filed a withdrawl of his previous notice of nonparticipation and an Acknowledgment of Paternity. The disposition hearing was held September 8, 1999. Mr. Romig was present at the hearing. In a September 13, 1999 Judgment Entry, the trial court ordered Erich placed in the temporary custody of DHS and adopted the initial case plan. On September 15, 1999, the guardian ad litem filed a Motion for an Emergency Review Hearing. While in foster care, Erich had been attacked by the foster family's pet dog on two separate occasions, resulting in hospitalization and five stitches to his face. The guardian ad litem expressed concern with respect to Erich's safety because the dog was still in the house and further asked for a hearing to discuss the inappropriate disciplinary measures utilized by the foster family. On the same day, Mr. Romig filed a Motion to Terminate Custody with DHS and grant him, Erich's natural father, temporary custody for the remainder of the case. On September 16, 1999, the magistrate ordered Erich immediately removed from the foster home. Unfortunately, Ms. Johnson was murdered on or about September 21, 1999. On September 22, 1999, Mr. Romig requested an emergency review hearing to address the issue with respect to advising Erich of the death of his mother. On September 24, 1999, DHS amended the case plan to include Mr. Romig. Mr. Romig filed objections to the case plan and the magistrate conducted a hearing on October 12, 1999. At the same hearing, the magistrate heard arguments on the motion for change of custody. The matter was continued until November 4, 1999, and temporary custody was continued with DHS until such time. On November 3, 1999, Mr. Romig filed a Motion to Appoint Counsel for his son. In a November 8, 1999 Judgment Entry, the trial court denied Mr. Romig's motion. On November 4, 1999, the magistrate completed the hearing on Mr. Romig's objections to the case plan. At the conclusion of the hearing, Mr. Romig requested time to file a post hearing brief after review of the transcript. This request was granted and a briefing schedule was established. On November 30, 1999, Mr. Romig filed his final written argument. On November 16, 1999, DHS filed its second Amended Case Plan and Mr. Romig filed objections to this plan on November 23, 1999. On December 2, 1999, DHS filed a Motion for Ex parte Order terminating visitation with Mr. Romig. DHS alleged Mr. Romig had repeatedly ignored the rules and regulations of supervised visitation. In a December 15, 1999 Magistrate's Decision, the magistrate found supervised visitation at DHS would continue however, the magistrate ordered Mr. Romig to adhere to all DHS rules and regulations. The magistrate further cautioned Mr. Romig consistent, quality visits supervised at DHS were an absolute prerequisite to any unsupervised visit or any change in location of supervised visit. In a December 28, 1999 Magistrate's Decision, the magistrate denied Mr. Romig's motion for custody and continued temporary custody with DHS. Mr. Romig filed objections to the magistrate's decision on December 29, 1999. In a January 3, 2000 Judgment Entry, the trial court noted the supervised visits were progressing in a satisfactory manner and ordered supervised visitation to occur at Mr. Romig's residence. On January 18, 2000, Mr. Romig filed objections to the January 3, 2000 Judgment Entry. Specifically, Mr. Romig objected to the trial court's failure to prepare findings of fact supporting its decision. On February 7, 2000, DHS filed a Motion to Increase Visitation. DHS noted supervised visitation in Mr. Romig's residence had gone "quite well" and Mr. Romig had completed the case plan. On February 8, 2000, DHS filed a Motion to Suspend Implementation of its own February 7, 2000 Motion to Increase Visitation. Apparently, Mr. Romig appealed this Court's dismissal of his petitions for a writ of habeas corpus to the Ohio Supreme Court. Accordingly, DHS requested a stay pending resolution of that appeal. The matter came on for hearing before the trial court on February 18, 2000 on the objections to the magistrate's decision. In a March 2, 2000 Judgment Entry, the trial court overruled Mr. Romig's objections to the magistrate's decisions of December 15, 1999; December 28, 1999; and January 3, 2000. Further, the trial court adopted, approved, and entered each as a matter of record. It is from this judgment entry appellant prosecutes his appeal assigning the following as error:
 I. THE COURT ERRED IN FAILING TO FIND THAT EARL R. ROMIG'S DUE PROCESS AND EQUAL PROTECTION RIGHTS HAD BEEN VIOLATED WHEN HE WAS DENIED THE RIGHT TO BE HEARD AT ANY STAGE OF THESE PROCEEDINGS. THE COURT ERRED WHEN IT DETERMINED THAT AN UNWED FATHER DOES NOT HAVE THE SAME STANDING AS A FATHER IN WEDLOCK.
 II. THE COURT ERRED WHEN IT DETERMINED THAT ERICH ROMIG WAS DEPENDENT WITHOUT ANY EVIDENCE TO SUPPORT SUCH FINDING.
 III. THE COURT ERRED AT EVERY STAGE OF THE PROCEEDINGS WHEN IT FAILED TO MAKE SPECIFIC WRITTEN FINDINGS OF FACT.
 IV. THE COURT ERRED WHEN IT FAILED TO COMPLY WITH THE MANDATORY REQUIREMENTS OF R.C. 2151.419.
 V. THE COURT ERRED WHEN IT DENIED COUNSEL TO ERICH ROMIG IN VIOLATION OF R.C. 2151.352.
 I
In appellant's first assignment of error, he maintains the trial court erred in denying him the right to be heard at any stage of these proceedings in derogation of his due process and equal protection rights. Further, appellant maintains the trial court erred in finding an unwed father does not have the same standing as a father in wedlock. We disagree. We have reviewed the record and find the trial court refused to acknowledge Mr. Romig as a party only for that period of time before he established paternity. This time frame included the trial court's adjudication of Erich as a dependent child. However, after Mr. Romig filed a withdrawl of his "Notice of Non-Participation," and Acknowlegement of Paternity the trial court recognized him as a party and he participated in all trial court proceedings thereafter. App.R. 4 governs the time for appeal, and states, in relevant part: (A) Time for appeal
A party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure.
Because appellant failed to file a timely appeal from the judgment entry which adjudicated Erich to be a dependent child, we find this assignment of error to be without merit. Appellant cannot collaterally attack that judgment now by his appeal of the trial court's March 2, 2000 Judgment Entry. Further, at the time of adjudication, appellant had notified the court of his intention not to participate in the action and therefore this claim of error is also meritless under the invited error doctrine. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains the trial court erred in finding Erich Romig was dependent without any evidence to support such finding. We disagree. The trial court found Erich to be a dependent child in an August 13, 1999 Judgment Entry. At that time, appellant had withdrawn from the action. Subsequently, on September 7, 1999, Mr. Romig withdrew his notice of non-participation and acknowledged paternity. Therefore, appellant could have, as a legitimate party, timely filed an appeal from the trial court August 13, 1999 Judgment Entry finding Erich to be a dependent child. However, because appellant failed to timely file a notice of appeal from the August 13, 1999 Judgment Entry pursuant to App.R. 4, this assignment is without merit, for the same reason we found his first assignment of error to be without merit. We note the March 2, 2000 Judgment Entry, from which appellant prosecutes this appeal, in no way references the initial adjudication of dependency. Appellant's second assignment of error is overruled.
 III, IV, V
In appellant's third and fourth assignments of error, he attacks the trial court's adoption of three magistrate's decisions relating to visitation and custody issues along with objections to two case plans. In appellant's fifth assignment of error, he attacks the trial court's November 8, 1999 Judgment Entry denying appellant's motion to appoint counsel for Erich. On August 23, 2000, DHS filed a Notice with this Court. In an August 17, 2000 Judgment Entry, the trial court granted custody of Erich Romig to Mr. Romig, terminating protective supervision and the involvement of the Department of Job and Family Services. We find the trial court's August 17, 2000 Judgment Entry makes the issues raised in appellant's third, fourth and fifth assignments of error moot. Appellant's third and fourth assignments address custody issues. Because Appellant now has custody of the child, these issues are moot. Appellant's fifth assignment of error addresses the November 8, 1999 Judgment Entry. As stated above, appellant only appeals the March 2, 2000 Judgment Entry, which appears to have absolutely no relation to the November 8, 1999 Judgment Entry denying the child counsel. Assuming arguendo, the two entries were related, we would find any issues of appointment of counsel as they impacted the litigation over custody issues determined in the March 2, 2000 Judgment Entry are also moot. Appellant's third, fourth and fifth assignments of error are overruled.
The March 2, 2000 Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.
 ______________________ HOFFMAN, J.